UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARY COSGROVE,

                Plaintiff,                      Case No. 1:15-cv-926

v.                                                      Honorable Robert J. Jonker

TONY TRIERWEILER et al.,

                Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Trierweiler, Davids, Hadden, Lane, McKee, Bolten, and Unknown Parties ##1 and 2. The Court will serve the complaint against Defendants Normington, Avery, O'Connor, Hickok and Merano.

**Discussion**

I. Factual allegations

Plaintiff Cary Cosgrove presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility, though the actions about which he complains occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). He sues the following IBC officials: Warden Tony Trierweiler and former Warden (unknown) McKee; Deputy Warden Unknown Party #1; Assistant Deputy Warden (ADW) (unknown) Davids; Unit Counselors Lauren Normington, (unknown) Avery, and Lacey O'Connor; Correctional Officers (Unknown) Hickok and (unknown) Merano; Block Counselors Brian Hadden, (unknown) Lane, and (unknown) Bolten; and Mental Health Supervisor Unknown Party #2.

The allegations of Plaintiff's amended complaint (ECF No. 16) are few and largely conclusory. He contends that, beginning around May 24, 2015, Defendants Hickok and Merano began questioning him about a lawsuit he had filed against employees of the MDOC. After Plaintiff told them that it was none of their business and asked that they not question him further, Defendants Hickok and Merano began to harass Plaintiff and wrote multiple false misconduct tickets against him, possibly on June 14, 2015. Plaintiff filed a grievance, but it was denied for lack of evidence. Thereafter, Plaintiff asked to be locked in a secure unit because he no longer felt safe on the unit. Plaintiff was informed that he could not seek protective custody from staff, and an unidentified person issued Plaintiff a Class I misconduct ticket for disobeying a direct order. Plaintiff considered the misconduct ticket to be retaliatory, but he was later found guilty and received five days' detention before being moved to a different unit.

Plaintiff next complains that Defendants Normington, Avery and O'Connor on separate occasions opened Plaintiff's sealed, outgoing legal mail that had previously been inspected before sealing. On June 14, 2015, Plaintiff wrote to then-Warden McKee, asking to be moved from IBC to another facility because of the alleged harassment by officers, managers and deputy wardens who had worked with Plaintiff's father, a former correctional officer at the Carson City Correctional Facility. Plaintiff also alleges that Defendants Trierweiler and Davids attended his high school graduation open house. Plaintiff argues that, as the son of a former correctional officer, officials should not have placed him at a facility where he was known. Unidentified officials told him that they were not required to transfer him, and they told him either to return to his general-population placement or be sent to administrative segregation.

Plaintiff complains that during May and June 2015, Defendants Avery, Lane and Bolton on one or more occasions denied him extra legal envelopes. He also alleges that, when he arrived at IBC, he filed multiple mental health request forms, asking to be seen for stress caused at his last two prison facilities. Plaintiff asserts that he did not originally receive any responses. Later, when he locked up out of fear for his safety, unidentified Mental Health employees spoke with him twice and told him that he was fine and that he did not need counseling. Plaintiff argues that he is entitled by law and policy to help with his depression.

According to the amended complaint, Plaintiff attempted to grieve his issues by filing grievances, but all were denied or rejected at Step II and lost at Step III. Plaintiff also alleges that Defendant Trierweiler placed him on grievance restriction at one point.

Plaintiff sweepingly claims that he has been subjected to mail tampering, retaliation, failure to protect, discrimination, due process violations and mental abuse. He seeks damages in the

amount of $1.5 million and injunctive relief in the form of an order transferring him to either the Clinton County Jail or the MDOC's Special Alternative Incarceration Program, or granting him early release on parole.

      II.      <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Supervisory Liability and Grievances

Plaintiff makes no factual allegations in the body of his complaint against Defendants Davids, Hadden, or Unknown Parties ##1 and 2. He potentially intends to allege, as he does with Defendants McKee and Trierweiler, that they are responsible for his alleged injuries by way of their supervisory liability or their failure to respond to his grievances and complaints. Plaintiff also alleges that Defendant Trierweiler wrongfully placed him on grievance restriction.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims

against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendants Davids, Hadden and Unknown Parties ##1 and 2 in the body of his complaint. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

To the extent that he alleges or intends to allege that Defendants Davids, Hadden, Unknown Parties ##1 & 2, like Defendants McKee and Trierweiler, either failed to supervise their subordinates or failed to respond adequately to his grievances, Plaintiff also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained

in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Davids, Hadden, Unknown Parties ##1 & 2, McKee, or Trierweiler engaged in any active unconstitutional behavior based on their supervision of others or their responses to grievances and complaints.

Moreover, Plaintiff's allegation that Defendant Trierweiler placed him on grievance restriction, or modified access, also fails to state a claim.[1] Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past. Moreover, even if Grievance Coordinator Walker improperly denied Plaintiff a grievance form, Plaintiff could file a grievance directly to the Director's Office at Step III claiming staff corruption. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ II. Further, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a

---

[1] "A prisoner or parolee who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph L, may have access to the grievance process limited by the Warden or FOA Area Manager for an initial period of not more than 90 calendar days. If the prisoner or parolee continues to file such grievances while on modified access, the Warden or FOA Area Manager may extend the prisoner's or parolee's modified access status for not more than an additional 30 calendar days for each violation. In CFA, a recommendation to place a prisoner on modified access shall be submitted only by the Grievance Coordinator and shall include a list of the grievances forming the basis for the recommendation and the reason for the recommendation." MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ HH (eff. July 9, 2007).

lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable access-to-the-courts claim against Defendant Trierweiler for placing him on modified access to the grievance process.

Finally, the Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001).

For all these reasons, Plaintiff fails to state a claim against Defendants Davids, Hadden, Unknown Parties ##1 & 2, McKee, and Trierweiler.

### B.   Access to the Courts

Plaintiff alleges that Defendants Lane, Avery and Bolton on one or more occasions denied him an extra envelope for a legal mailing. Plaintiff's sole possible constitutional claim arising from the allegation is that he was deprived of his right to access the courts by Defendants' conduct.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal

information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed

actual injury to include requirement that action be non-frivolous). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff's conclusory allegation about the occasional denial of an envelope falls far short of stating a claim for denial of access to the courts. Plaintiff wholly fails to identify any injury caused by the deprivations, much less the actual injury contemplated by *Lewis*, 518 U.S. at 351-55. He therefore fails to state an access-to-the-courts claim against Defendants Lane, Avery and Bolton.[2]

### C. Eighth Amendment

Plaintiff alleges that Defendants Hickok and Merano subjected him to verbal harassment and retaliation in the form of false misconduct tickets. He contends that the harassment ultimately caused him to be afraid for his safety. He complains that unspecified other Defendants failed to protect him by refusing to place him in protective custody. In addition, he suggests that his

---

[2]The alleged denial of access to the courts is the sole claim that Plaintiff makes against Defendants Lane and Bolton, so the complaint will be dismissed against them. Plaintiff, however, alleges that Defendant Avery also violated his First Amendment rights by unconstitutionally opening and reading his legal mail. As discussed, *infra*, he Court will order service of the legal-mail claim against Defendant Avery.

constitutional rights were violated by his placement at a prison facility, where officers who had previously worked with his father were stationed. Finally, he complains that unidentified persons denied him adequate mental health counseling on unspecified occasions.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against

prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that an employee or other prisoner would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Plaintiff fails to allege an Eighth Amendment violation. To the extent that Plaintiff suggests that Defendants Hickok and Merano threatened his safety by writing false misconducts in retaliation for Plaintiff having filed a lawsuit or verbally harassed him, his allegations fall short of demonstrating the sort of risk of injury protected by the Eighth Amendment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do

not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Moreover, to the extent that Plaintiff alleges that Hickok and Merano's harassment had the potential to cause him to be placed in segregation, he fails to state a claim. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Finally, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C.

§1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants Hickok and Merano.

Finally, Plaintiff's allegation that some unnamed person or persons did not provide him sufficient counseling services is entirely conclusory. Plaintiff neither identifies a responsible Defendant nor specifies the seriousness of his need or the subjective appreciation of that need by any Defendant.

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against any Defendant.

### D. Remaining Claims

Upon review, the Court concludes that Plaintiff has sufficiently alleged a First Amendment claim of interference with his legal mail against Defendants Normington, Avery and O'Connor. The Court also concludes that Plaintiff's allegations state a retaliation claim against Defendants Hickok and Merano. The Court therefore will order service of the remaining claims on these Defendants.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Trierweiler, Davids, Hadden, Lane, McKee, Bolten, and Unknown Parties ##1 and 2 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss for failure to state a claim Plaintiff's Eighth Amendment and access-to-the-courts claims. The Court will serve the remaining claims against Defendants Normington, Avery, O'Connor, Hickok and Merano.

An Order consistent with this Opinion will be entered.


Dated:     October 28, 2015              /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE