UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARY COSGROVE,

        Plaintiff,

Case No. 1:15-cv-926

Hon. Robert J. Jonker

v.

TONY TRIERWEILER, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Normington, Avery, O'Connor, Hickock and Merano (docket no. 40).

    **I.**    **Background**

After screening plaintiff's amended complaint and dismissing his claims against 12 defendants, the Court ordered service on five defendants: Unit Counselors Lauren Normington, Larry Avery, and Lacey O'Connor; and Correctional Officers Andrew Hickok and Tyler Merano. The Court previously summarized plaintiff's claims against these five defendants as follows:

> The allegations of Plaintiff's amended complaint (ECF No. 16) are few and largely conclusory. He contends that, beginning around May 24, 2015, Defendants Hickok and Merano began questioning him about a lawsuit he had filed against employees of the MDOC. After Plaintiff told them that it was none of their business and asked that they not question him further, Defendants Hickok and Merano began to harass Plaintiff and wrote multiple false misconduct tickets against him, possibly on June 14, 2015. Plaintiff filed a grievance, but it was denied for lack of evidence. Thereafter, Plaintiff asked to be locked in a secure unit because he no longer felt safe on the unit. Plaintiff was informed that he could not seek protective custody from

staff, and an unidentified person issued Plaintiff a Class I misconduct ticket for disobeying a direct order. Plaintiff considered the misconduct ticket to be retaliatory, but he was later found guilty and received five days' detention before being moved to a different unit.

Plaintiff next complains that Defendants Normington, Avery and O'Connor on separate occasions opened Plaintiff's sealed, outgoing legal mail that had previously been inspected before sealing. On June 14, 2015, Plaintiff wrote to then-Warden McKee, asking to be moved from IBC to another facility because of the alleged harassment by officers, managers and deputy wardens who had worked with Plaintiff's father, a former correctional officer at the Carson City Correctional Facility. Plaintiff also alleges that Defendants Trierweiler and Davids attended his high school graduation open house. Plaintiff argues that, as the son of a former correctional officer, officials should not have placed him at a facility where he was known. Unidentified officials told him that they were not required to transfer him, and they told him either to return to his general-population placement or be sent to administrative segregation.

Plaintiff complains that during May and June 2015, Defendants Avery, Lane and Bolton on one or more occasions denied him extra legal envelopes. He also alleges that, when he arrived at IBC, he filed multiple mental health request forms, asking to be seen for stress caused at his last two prison facilities. Plaintiff asserts that he did not originally receive any responses. Later, when he locked up out of fear for his safety, unidentified Mental Health employees spoke with him twice and told him that he was fine and that he did not need counseling. Plaintiff argues that he is entitled by law and policy to help with his depression.

According to the amended complaint, Plaintiff attempted to grieve his issues by filing grievances, but all were denied or rejected at Step II and lost at Step III. Plaintiff also alleges that Defendant Trierweiler placed him on grievance restriction at one point.

Plaintiff sweepingly claims that he has been subjected to mail tampering, retaliation, failure to protect, discrimination, due process violations and mental abuse. He seeks damages in the amount of $1.5 million and injunctive relief in the form of an order transferring him to either the Clinton County Jail or the MDOC's Special Alternative Incarceration Program, or granting him early release on parole.

Opinion (docket no. 20, PageID.187-189). The Court concluded that plaintiff had sufficiently

alleged a First Amendment claim of interference with his legal mail against defendants Normington,

Avery and O'Connor, and a retaliation claim against defendants Hickok and Merano. *Id.* at PageID.199.

## II. Defendants' motion for summary judgment

### A. Legal standard

Defendants have moved for summary judgment because plaintiff failed to exhaust any grievances with respect to his claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

4

2.      **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

3.      **Discussion**

Plaintiff's complaint arises out of conduct which allegedly occurred between May and June, 2015. The record reflects that from May 2009 through January 28, 2016, plaintiff had not exhausted any grievances through Step III. *See* Nurenberg Certification and MDOC Step III Grievance Report (docket no. 41-2, PageID.314-316). In his response, plaintiff contends that there

5

were barriers to filing Step III grievances. However, plaintiff has not submitted any evidence to support this claim.[1] Based on this record, plaintiff has not properly exhausted any claims against defendants. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Reed-Bey*, 603 F.3d at 325; *Sullivan*, 316 Fed. Appx. at 470. Accordingly, defendants are entitled to summary judgment.

### III.  Recommendation

For these reasons, I respectfully recommend that the motion for summary judgment filed by defendants Normington, Avery, O'Connor, Hickock and Merano (docket no. 40) be **GRANTED** and that this action be **TERMINATED**.

Dated:  September 7, 2016                 /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] Three months after plaintiff filed his response to defendants' motion for summary judgment he sought to amend the response. The Court denied the motion, which included, among other things, an unsigned affidavit or declaration from another prisoner. *See* Order (docket no. 90).